UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIN S. CHHAN,            )<br>                          )<br>       Plaintiff,        )<br>                          )<br>                          )<br>   v.                     )<br>                          )<br>                          )<br> HILTON HOTELS CORPORATION,)<br>                          )<br>                          )<br>       Defendant.         )<br>_____) | Civ. No.: 1:07cv01180 (HHK) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Hilton Hotels Corporation ("Hilton"), by its attorneys, submits this memorandum of points and authorities in support of its motion for summary judgment.

**I.      SUMMARY**

Hilton employed Kin Chhan as a Banquet Server. Under Hilton's Harassment-Free Workplace policy, employees are prohibited from engaging in "behavior or conduct that could be interpreted as harassment." Under Hilton's Standards of Conduct policy, employees are prohibited from violating the Harassment Free-Workplace policy or engaging in discourteous or inappropriate conduct with other employees.

On July 19, 2006, Hilton employees reported to Hilton's Director of Human Resources, Robin Sterrett, that Chhan had made offensive, sexually based comments. During Sterrett's investigation, three witnesses provided consistent accounts of sexually offensive statements made by Chhan. Each witness told Sterrett that Chhan made comments such as he would "fuck their wives" and he "give good fuck." Based on these

consistent witness accounts, Sterrett concluded Chhan violated the Standards of Conduct and Harassment-Free Workplace policies. This policy violation occurred less than five months after Chhan had been suspended for threatening a coworker. Consistent with her treatment of other employees, Sterrett terminated Chhan for violating these policies.

Chhan's complaint alleges his termination was due to his race and national origin. Hilton requests summary judgment on both discrimination claims for the following reasons:

### A.   Chhan Cannot Establish a Prima Facie Case

Under District of Columbia law, Chhan cannot establish a prima facie case for discriminatory termination unless he can show: 1) Hilton replaced him with someone outside his protected class, or 2) Hilton retained similarly situated employees outside Chann's protected class. Here, is it undisputed that Hilton did not replace Chhan. There is also no evidence Hilton retained any similarly situated employees who engaged in "nearly identical" misconduct. In fact, it is undisputed that Hilton terminated employees outside Chhan's protected class for violating the same policies. Accordingly, Chhan cannot establish a prima facie case

### B.   Chhan Cannot Establish Pretext

Under the District of Columbia Human Rights Act (DCHRA), a plaintiff cannot establish pretext if the undisputed facts show the employer believed the plaintiff violated a work policy and terminated the plaintiff for that reason. Here, it is undisputed Sterrett believed the three witnesses who provided consistent accounts of Chhan's sexually offensive statements and Sterrett terminated Chhan for that reason. In fact, Chhan admitted that the only reason Sterrett terminated him was because she believed the three

witnesses. Chhan also admitted, if the witnesses' accounts were true, his termination was justified. Accordingly, Chhan cannot establish pretext.

Under District of Columbia law, a plaintiff also cannot establish pretext if he cannot identify any similarly situated employees who engaged in "nearly identical" misconduct and were not terminated. As stated above, there is no evidence Hilton has retained any similarly situated employees. Instead, it is undisputed that Hilton has terminated several employees, of different races and national origins than Chhan, who violated the same Standards of Conduct and Harassment-Free Workplace policies. Given these facts, no reasonable jury could conclude Chhan's termination was discriminatory.

Hilton requests summary judgment on all counts because Chhan cannot establish a prima facie case and cannot establish pretext.

## II.    UNDISPUTED MATERIAL FACTS

### A.    Hilton Prohibits Offensive Conduct and Harassment in the Workplace

Hilton Hotels Corporation is a hospitality company that operates the Hilton Washington, a hotel located in Washington, D.C. (¶ 1).[1] In 1983, Hilton hired plaintiff Kin Chhan as a busperson in the hotel restaurant at Hilton Washington. (¶ 2). In 1995, Hilton promoted Chhan to Banquet Server. (¶ 2). Chhan worked as a Banquet Server until his termination. (¶ 2). Chhan is an Asian male who self-identifies as Chinese and Cambodian. (¶ 2).

Hilton employees are required to adhere to Hilton's Harassment-Free Workplace policy, which prohibits employee "behavior or conduct that could be interpreted as harassment." (¶ 4). A copy of the policy is included in the Team Member Handbook, and

---

[1] Paragraph citations are to Hilton's statement of material undisputed facts filed contemporaneously with this memorandum.

3

all employees receive periodic harassment training. (¶ 4). Hilton employees are also required to adhere to Hilton's Standards of Conduct policy. (¶ 5). A copy of the policy is included in the Team Member Handbook. (¶ 5). A section of the Standards of Conduct Policy, titled "Examples of Prohibited Team Member Conduct," lists examples of prohibited conduct, including:

- "Offensive or disruptive behavior, including fighting with or threatening team members or guests";
- "Harassing, threatening, intimidating, coercing or unlawfully discriminating against others";
- "Violation of the Hilton Harassment-Free Workplace Policy";
- "Using abusive language or profanity";
- "Discourtesy or inappropriate conduct with guests or team members." (¶ 5).

An employee who violates the Harassment-Free Workplace or Standards of Conduct policy is subject to discipline. (¶ 6). Depending on the nature of the violation, the employee may receive a warning, a suspension from 1-5 days, or may be terminated. (¶ 6). The type of discipline an employee may receive also depends on the employee's past disciplinary record. (¶ 6).

Chhan received a copy of the Team Member Handbook containing these policies. (¶ 7). Chhan admitted he reviewed the handbook and understood its contents. (¶ 7). Chhan also admitted he understood Hilton's Harassment-Free Workplace Policy. (¶ 8). On October 31, 2005, Chhan participated in Hilton's Harassment-Free Workplace training. (¶ 8). Chhan also testified he was specifically aware of the "Examples of

4

Prohibited Team Member Conduct" included in the Standards of Conduct policy. (¶ 9). Chhan testified he knew engaging in conduct prohibited under Hilton's Standard of Conduct policy was grounds for discipline, including termination. (¶ 9).

### B.     Hilton Investigated Allegations That Chhan Threatened a Coworker

In 1996, Robin Sterrett became Director of Human Resources for Hilton Washington. (¶ 3). As Director of Human Resources, Sterrett's duties included investigating employee violations of Hilton policies. (¶ 10). After completing an investigation, Sterrett was responsible for determining what, if any, discipline would be given to an employee who was found to have violated a Hilton policy. (¶ 10).

In early March 2006, Sterrett learned there had been an incident on March 5, 2006, between Chhan and a Banquet Houseperson, Mustafa Allame. (¶ 11). Sterrett investigated the incident. (¶ 11). In the course of Sterrett's investigation, she spoke with Hilton employees Mustafa Allame and Lolo Villagomez. (¶ 12). Both employees told Sterrett they had witnessed Chhan say "I want to kick your M-F ass" to Allame. (¶ 12). Both employees also told Sterrett that Chhan started to take off his jacket as though he was ready to start a fight with Allame. (¶ 12). As part of the investigation, Sterrett spoke with Chhan. Chhan denied making the statement or acting in a way that would have led Allame and Villagomez to believe he wanted to fight. (¶ 13).

### C.     Chhan Was Suspended for Five Days for Threatening a Co-Worker

Sterrett was not aware of any reason why Allame or Villagomez would provide false information about Chhan. (¶ 14). Based on the two witness accounts, Sterrett concluded Chhan had violated Hilton's policy against threatening co-workers. (¶ 14). Sterrett suspended Chhan for five days for violating Hilton policy. (¶ 14).

Chhan admits he does not know who Sterrett spoke with during the course of this investigation or what information was provided to her. (¶ 15). Chhan admits Sterrett suspended him only because she believed the other employees' version of events relating to the March 5, 2006 incident. (¶ 16).

### D.  Three Coworkers Reported that Chhan Made Sexually Offensive Statements

On July 19, 2006, employees Hernan Vasquez, Mustafa Abouhouda and Rosa Rosero complained to Sterrett that Chhan had made obscene sexual statements earlier that morning. (¶ 17).

It is a common practice for Hilton employees to be placed on leave pending an investigation of a policy violation. (¶ 18). Accordingly, Sterrett placed Chhan on leave pending investigation. (¶ 18).

In the course of her investigation, Sterrett interviewed Vasquez, Abouhouda, Rosero and employee Peter Chan about what, if anything, they had heard Chhan say the morning of July 19. (¶ 19).

Sterrett determined Vasquez had not witnessed Chhan's conduct and did not have personal knowledge of the incident. (¶ 20). Since Vasquez was not a witness, Sterrett did not consider any information provided by Vasquez in reaching her conclusion about Chhan's behavior the morning of July 19. (¶ 20).

Rosero told Sterrett she heard Chhan make offensive statements to the effect that he could "fuck their wives" and that he "give good fuck." (¶ 21). Sterrett observed Rosero was upset about Chhan's comments. (¶ 21). Rosero testified that, at the time she was interviewed by Sterrett, Rosero told her everything she had heard Chhan say on July 19. (¶ 22).

6

Abouhouda also testified he heard Chhan making sexually offensive statements on July 19, 2006. (¶ 23). Abouhouda testified he told Sterrett about the statements he heard Chhan make. (¶ 23). After interviewing Abohouda, Sterrett concluded he had heard Chhan make offensive statements to the effect that he could "fuck their wives" and that he "give good fuck." (¶ 24). Sterrett also observed Abouhouda was upset about Chhan's comments. (¶ 24).

Peter Chan testified he told Sterrett he also heard Chhan make sexually offensive comments:

> Q.   When you eventually talked to Robin Sterrett from human resources, do you remember telling her that Kin Chhan said "I can do it in front of you, I want to show you how good I am?"
>
> A.   Yes.
>
> Q.   "I can have any woman I want?"
>
> A.   Yes.
>
> Q.   Okay. And Peter confirmed that Kin used the word "fuck." Can you, when you're telling Ms. Sterrett, I can do it in front of you, are you really telling her that what he was saying, Kin Chhan was saying was, I can fuck in front of you? Is that what he was saying?
>
> A.   I can fuck your wife in front of you and show you how strong I am. That's what I told Robin. (¶ 25).

After interviewing Chan, Sterrett concluded he had heard Chhan say "I can do their wives, I'm good at doing it, I can do it in front of anyone" and that Chhan had used the "F-word." (¶ 26). Peter Chan is Chinese. (¶ 27).

Sterrett also interviewed Chhan as part of the investigation. (¶ 28). He denied making sexually offensive statements the morning of July 19. (¶ 28).

7

Chhan admits he does not know what Vasquez and Abouhouda told Sterrett about what they observed or who else Sterrett interviewed:

> Q. And you don't know what Hernan [Vasquez] said to Robin, right?
>
> A. I don't know.
>
> Q. You don't know what Mustafa [Abouhouda] said to Robin, right?
>
> A. I don't know.
>
> Q. You don't know if Robin talked to any other witnesses, right?
>
> A. I don't know. (¶ 29).

### E. Hilton Terminated Chhan for Committing a Serious Violation of Hilton Policy for the Second Time in Less Than Five Months

Sterrett concluded the information provided by Rosero, Abouhouda and Chan was credible because she was not aware of any reason Rosero, Abouhouda or Chan would give her false information about Chhan. (¶ 30). Sterrett believed Chhan had a reason to deny the allegations because he did not want to be subject to discipline. (¶ 30).

Relying on these three witness accounts, Sterrett concluded Chhan had violated Hilton's Harassment-Free Workplace Policy by engaging in "conduct that could be interpreted as harassment." (¶ 31). Sterrett concluded Chhan also violated Hilton's Standards of Conduct policy by engaging in "discourtesy or inappropriate conduct" with his co-workers. (¶ 31). Due to the nature of Chhan's policy violation, and because it was the second time Chhan had committed a serious violation of Hilton policy within a five-month period, Sterrett decided to terminate Chhan's employment. (¶ 32).

Sterrett informed Chhan's supervisor, Banquet Manager Kevin O'Shea, of her investigation findings and her decision to terminate Chhan. (¶ 33). Sterrett and O'Shea

informed Food and Beverage Director, Gordon Marr, and General Manager, Frank Otero, of the termination decision. (¶ 33).

On July 27, 2006, Sterrett and O'Shea met with Chhan and told him Hilton was terminating his employment because the investigation had determined Chhan had made offensive statements in violation of Hilton policy. (¶ 34). Chhan testified the only reason he believes he was terminated is because Sterrett believed the other employees' accounts of his conduct on July 19:

> Q. Robin told you she was terminating you for violating the harassment policy, right?
>
> A. Yes.
>
> Q. And she decided you were violating the harassment policy because of the accusations that were reported to her on July 19, right?
>
> A. Yeah.
>
> Q. So you have testified that those accusations are untrue, right?
>
> A. That's untrue, yeah.
>
> Q. But Robin believed the accusations, right?
>
> A. Yeah.
>
> Q. And so that's why she terminated you, right?
>
> A. Yeah.
>
> Q. And that's the only reason why she terminated you, right?
>
> A. Yeah. (¶ 35).

Chhan testified he did not know why Sterrett believed the other employees she interviewed instead of him. (¶ 36).

F.  **Chhan Was Not Replaced**

Hilton did not hire a Banquet Server or other employee to replace Chhan. (¶ 37). Chhan admits he does not know if anyone was hired to replace him. (¶ 38).

G.  **Hilton Has Terminated Employees Outside Plaintiff's Protected Class for Similar Policy Violations**

During the time Sterrett was Hilton Washington's Director of Human Resources, Chhan was the only employee who violated the Harassment Free-Workplace and Standards of Conduct policies less than five months after being suspended for another serious violation of Hilton policy. (¶ 39). However, in January 2005, Sterrett terminated an employee for calling a co-worker a "bitch" in violation of Hilton's Standards of Conduct policy. This occurred approximately two months after the employee was suspended for violating Hilton policy by being discourteous to a coworker. (¶ 40). The employee was African-American. (¶ 40). The employee was subject to the same disciplinary procedure as Chhan. (¶ 41). Like with Chhan, Sterrett suspended the employee for five days for her first policy violation. (¶ 41). Like with Chhan, Sterrett placed the employee on leave while she investigated the second policy violation. (¶ 41). Like with Chhan, after Sterrett had completed her investigation and determined the employee had violated Hilton policy for a second time, Sterrett terminated the employee. (¶ 41).

Sterrett has also terminated several other employees of different races and national origins than Chhan for engaging in offensive conduct in violation of Hilton policy even though the employees had no record of discipline in the prior five months:

- In May 2002, Sterrett terminated a Hispanic Banquet Server for violating Hilton's Harassment-Free Workplace policy. (¶ 42). The employee had no record of previous discipline. (¶ 42).

- In September 2002, Sterrett terminated an African American employee for violating Hilton policy for threatening a coworker. (¶ 42). The employee had no record of discipline in the prior five months. (¶ 42).

- In May 2003, Sterrett terminated a Hispanic employee for violating Hilton policy by threatening a coworker. (¶ 42). The employee had no record of discipline in the prior five months. (¶ 42).

- In June 2005, Sterrett terminated an African-American employee for violating Hilton policy by threatening a coworker. (¶ 42). The employee had no record of discipline in the prior five months. (¶ 42).

- In March 2006, Sterrett terminated a Hispanic employee for violating Hilton policy by engaging in a verbal altercation with and threatening a coworker. (¶ 42). The employee had no record of discipline in the prior five months. (¶ 42).

Chhan admitted he does not know if Hilton has terminated other employees for making sexual or offensive comments in the workplace. (¶ 43).

## III. ARGUMENT

Chhan claims he was terminated because of his race and national origin. As explained below, the undisputed facts show Hilton terminated Chhan for violating Hilton's workplace policies twice in less than five months.

### A. Chhan Cannot Establish a Prima Facie Case of Discrimination

To establish a prima facie case of discriminatory discharge, Chhan must show:

> (1) that [he] belongs to a protected class, (2) that [he] performed at or near the level legitimately expected by [his] employer, (3) that [he] was discharged, and (4) that [he] was replaced by a person outside the protected class or that similarly situated individuals outside the protected class were retained.

*Waterhouse v. District of Columbia,* 124 F. Supp. 2d 1, 5 (D.D.C. 2000).

#### 1. Hilton Did Not Replace Chhan

Chhan cannot establish a prima facie case of race or national origin discrimination because he was not replaced by someone "outside his protected class." See *Waterhouse,* 124 F. Supp. 2d at 5. It is undisputed that Hilton did not hire anyone to fill the Banquet Server position left vacant by Chhan's termination.

#### 2. Hilton Did Not Retain Any Similarly Situated Employees

Chhan also cannot establish a prima facie case of race or national origin discrimination because he has no evidence Hilton has retained any similarly situated employees outside Chhan's protected class. Under the DCHRA, an employee is considered similarly situated to the plaintiff for the purpose of showing disparate treatment when all relevant aspects of their employment are "nearly identical":

> [To be similarly situated], all of the relevant aspects of the plaintiff's employment situation are nearly identical to those of the other employee. The similarity between the plaintiff and the other employee must exist in all relevant aspects of their respective employment circumstances, which would surely include both their rank in the company and the alleged misconduct. Thus, to be similarly situated, the plaintiff and the other employee must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Hollins v. Fannie Mae*, 760 A.2d 563, 578 (D.C. 2000) (citations omitted).[2]

In *Smith*, the plaintiff claimed he was discriminated against because his employer disciplined him for performance issues. The Court held the plaintiff could not establish a prima facie case because the plaintiff (like Chhan) could not identify any similarly situated employees outside his protected class who engaged in the same misconduct and were not disciplined:

> Plaintiff fails to specifically identify even one comparator, i.e., another employee to whom he was similarly situated as a matter of law. Without even the identification of an alleged comparator, the Court cannot determine that Plaintiff's employment situation was nearly identical to any other employee's. Moreover, it is doubtful that Plaintiff could identify a similarly situated employee because Plaintiff's own disciplinary history with defendant may be a relevant factor that distinguishes him. The record is entirely devoid of evidence that any other employee experienced the type of difficulty in completing an assignment that management believed Plaintiff was encountering, disregarded a direct order as to work schedule, or exhibited what management perceived as insubordination.

At * 52-53 (citations omitted).

Here, as in *Smith*, the record is entirely devoid of evidence that any other employee, of any race or national origin, was found to have engaged in the same misconduct as Chhan. No employee was found to have violated the Harassment Free-Workplace and Standards of Conduct policies by engaging in sexually offensive conduct less than five months after being suspended for threatening a coworker. As in *Smith*,

---

[2] *See also Smith v. Jackson*, 2008 U.S. Dist. LEXIS 17762, Civil Action No. 05-2042 (CKK), *52 (D.D.C. March 10, 2008) ("To show that another individual is similarly situated, Plaintiff must demonstrate that all of the relevant aspects of their employment situation are nearly identical."); *Holbrook v. Reno*, 196 F.3d 255, 261 (D.D.C. 1999) ("To prove that she is similarly situated to a male employee, a female plaintiff must demonstrate that she and the allegedly similarly situated male employee were charged with offenses of 'comparable seriousness.' A plaintiff must also demonstrate that 'all of the relevant aspects of her employment situation were "nearly identical" to those of the male' employee."); *Neuren v. Adduci, Mastraini, Meeks & Schill*, 43 F.3d 1507, 1514 (D.D.C. 1995) (concluding female associate a law firm who was terminated for failure to get along with other was not similarly situated to a less senior male associate who had trouble with legal writing because relevant aspects of employment situation were not "nearly identical.").

Chhan's own disciplinary history distinguishes him from other Hilton employees and prevents him from establishing a prima facie case.

To the extent the African-American employee who was terminated in January 2005 (after also violating Hilton policies twice in less than five months) is similarly situated to Chhan, that employee was also terminated. Sterrett treated both employees the same: 1) both received five-day suspensions for the first offense; 2) both were suspended pending the investigation of the second offense; and 3) both were terminated after Sterrett concluded the second offense had occurred. The employee, who was not in the same protected class as Chhan, was not treated more favorably than Chhan in any way.

For these reasons, Chhan cannot establish a prima facie case of discrimination. Accordingly, Hilton requests summary judgment on all claims.

### B.    There Is No Evidence Of Pretext

Violation of workplace rules or policies is a legitimate business reason for termination and satisfies the employer's burden under the second step in the traditional burden-shifting analysis. *See Williams v. Chertoff*, 495 F. Supp. 2d 17, 31 (D.D.C. 2007) ("the most common legitimate reason on which an employer might rely in disciplining an employee would be that the employee had violated an employment regulation or policy"); *Plummer v. Safeway, Inc.*, 1995 U.S. Dist. Lexis 3428, No. 93-0316 (PLF), *10-11 (D.D.C. March 17, 1995) (employer satisfied its burden by articulating plaintiff's failure to follow rules as reason for termination).

Here, Hilton's legitimate business reason for terminating Chhan is his violation of Hilton's Harassment-Free Workplace and Standards of Conduct policies less than five

months after a previous policy violation. Accordingly, Hilton has satisfied its burden of articulating a legitimate business reason. As explained below, Hilton is entitled to summary judgment because Chhan cannot establish that Hilton's reason is pretext.

### 1. The Undisputed Facts Show Sterrett Believed Chhan Violated Workplace Rules

When an employee challenges an employment decision as discriminatory, a Court may not "second-guess an employer's business judgment" when evaluating the plaintiff's claim. See *Brown v. Brody*, 199 F.3d 466 (D.D.C. 1999). Instead, the Court must consider only that evidence -- beyond an employee's "mere speculations" of the employer's motive -- that the employee produces to demonstrate an unlawful discriminatory motive. *Id.*

Under the DCHRA, a plaintiff cannot establish pretext when the employer believes in good faith the plaintiff violated work rules. In *Hollins*, the plaintiff was terminated for violating the employer's harassment policy. The plaintiff argued the employer's legitimate business reasons for his termination were pretext because the employer's investigation was flawed. The Court rejected Hollins' argument because the employer concluded in good faith that the employee violated the harassment policy:

> Even assuming arguendo that the investigations were flawed, the reliability of the investigations and reports is irrelevant. The only questions pertinent here are whether Fannie Mae believed, in good faith, that Hollins had committed the violations of its sexual harassment policies as alleged by the other employees, and whether its decision to discharge Hollins was based on that belief. Hollins presented no evidence whatever on either of those questions.

760 A.2d at 537; *see also Laboy v. O'Neill,* 180 F. Supp. 2d 18, 28 (D.D.C. 2001) ( "the Court will not infer a discriminatory or retaliatory intent from the alleged flaws in the investigation leading to plaintiff's discipline").

15

Here, as in *Hollins*, it is undisputed Sterrett believed Chhan committed the violations and her termination decision was based on that belief. It is undisputed Sterrett conducted an investigation of Chhan's alleged misconduct and three employee witnesses reported consistent accounts of sexually offensive statements Chhan made. Chhan admitted he does not know what the witnesses told Sterrett. It is undisputed Sterrett believed the three witnesses and based her finding that Chhan had violated Hilton policies on the information provided by these witnesses.

As in *Hollins*, Sterrett believed, in good faith and relying on three witnesses, that Chhan violated Hilton's harassment policies. As in *Hollins*, it is undisputed that Sterrett's decision to terminate Chhan was based on her belief. Indeed, Chhan admitted the *only* reason he was terminated is because Sterrett believed these witnesses.

It is also undisputed that Chhan's reported behavior violates Hilton's Harassment-Free Workplace and Standards of Conduct policies and that Chhan had been suspended five months before for threatening a coworker in violation of the Standards of Conduct policy. It is undisputed that these violations justified Chhan's termination because even Chhan admitted, if he had made the comments the employees accused him of making, his termination would have been justified.

As in *Hollins*, the undisputed facts show Hilton believed Chhan violated its policies and relied on that belief to terminate Chhan. For this reason too, Hilton is entitled to summary judgment.

### 2. Hilton's Treatment of Other Employees Proves There Was No Pretext

In *Plummer,* the plaintiff claimed he was terminated due to his race and sex. The Court found there was no evidence of pretext because the plaintiff could not identify any similarly situated employees outside his protected class who were treated differently:

> There is simply no evidence in the record that Safeway favored any similarly situated African-American female employees, or anyone else, over white male employees, including Mr. Plummer, or that Safeway failed to discipline or discharge anyone else for conduct nearly identical to plaintiff's. . . . Plaintiff has failed to demonstrate that there is a genuine issue of material fact that his termination by Safeway for breaching customer relations policy was a pretext for a discriminatory employment decision.

1995 U.S. Dist. Lexis 3428 at **13-14.

Here too, Chhan has no evidence that Hilton favored any similarly situated employee or that Hilton failed to terminate anyone else for conduct nearly identical to Chhan's.

In fact, Sterrett's termination of several employees outside Chhan's protected class for similar misconduct proves there is no evidence of pretext. In *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13 (D.D.C. 2004), the plaintiff was terminated for violating company rules and brought an age discrimination claim. The Court granted summary judgment relying upon the fact the defendant disciplined younger employees for similar violations:

> The defendant offers considerable evidence indicating that it treated younger employees no differently than the plaintiff. Specifically, the defendant provides evidence that it suspended several younger employees for using inappropriate, profane, or abusive language and other unprofessional conduct involving guests, supervisors and co-workers. The defendant also reveals that it terminated several of its younger employees for falsifying employment-related documents.

319 F. Supp. 2d at 22; *see also Waterhouse*, 124 F. Supp. 2d at 14-15 (defendant's termination of other employees for similar offenses rebuts plaintiff's claim of pretext).

Here, the undisputed facts show Sterrett has investigated allegations of misconduct by several other Hilton employees outside Chhan's protected class. Sterrett determined several of these employees (like Chhan) committed violations of the Standards of Conduct and Harassment-Free Workplace policies, and she terminated these employees. In fact, many of these employees were terminated even though, unlike Chhan, they did not have any recent discipline. The terminated employees, as group, represent different races and national origins than Chhan.

Chhan's inability to identify similarly situated employees who engaged in nearly identical misconduct but were retained is fatal to his case. This is particularly true where, as here, Hilton terminated employees outside Chhans' protected class for violations of the same policies. Accordingly, there is no evidence of pretext, and Hilton requests summary judgment on all counts on this basis as well.

## IV. CONCLUSION

For the foregoing reasons, Hilton asks the Court to grant its motion for summary judgment, enter judgment in Hilton's favor on all counts, and dismiss this case with prejudice.

Respectfully submitted,

**Hilton Hotels Corporation**

By: _____/s/_____
John M. Remy (D.C. Bar No. 461244)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182

*Counsel for Defendant*