UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIN S. CHHAN,<br><br>             Plaintiff,<br><br>v.<br><br>HILTON HOTELS CORPORATION,<br><br>             Defendant. | Civ. No.: 1:07cv01180 (HHK) |

### DEFENDANT'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Hilton Hotels Corporation ("Hilton"), by its attorneys, submits this statement of material undisputed facts in support of its motion for summary judgment pursuant to Local Civil Rule 7(h).

**A.  Hilton Prohibits Offensive Conduct and Harassment in the Workplace**

1.  Hilton Hotels Corporation is a hospitality company that operates the Hilton Washington, a hotel located in Washington, D.C. (Sterrett decl. ¶ 2).[1]

2.  In 1983, Hilton hired plaintiff Kin Chhan as a busperson in the hotel restaurant at Hilton Washington. (Chhan Tr. at 10, 13). In 1995, Hilton promoted Chhan to Banquet Server. (Chann Tr. at 16). Chhan worked as a Banquet Server until his termination. (Chhan Tr. at Exh

---

[1] The Declaration of Robin Sterrett ("Sterrett decl.") is attachment A hereto. Cited portions of Kin Chhan's deposition transcript (Chhan Tr.) are attachment B hereto. Cited portions of Sterrett's first deposition transcript (Sterrett Tr. I) are attachment C hereto. Cited portions of Rosa Rosero's deposition transcript (Rosero Tr.) are attachment D hereto. Cited portions of Mustapha Abouhouda's deposition transcript (Abouhouda Tr.) are attachment E hereto. Cited portions of Peter Chan's deposition transcript (Chan Tr.) are attachment F hereto. Cited portions of Sterrett's second deposition transcript (Sterrett Tr. II) are attachment G hereto.

1

1, p. 5). Chhan is an Asian male who self-identifies as Chinese and Cambodian. (Chhan Tr. at 44).

3.  In 1996, Robin Sterrett became Director of Human Resources for Hilton Washington. (Sterrett Tr. I at 2).

4.  Hilton employees are required to adhere to Hilton's Harassment-Free Workplace policy, which prohibits employee "behavior or conduct that could be interpreted as harassment." (Sterrett decl. ¶ 3). A copy of the policy is included in the Team Member Handbook, and all employees receive periodic harassment training. (Sterrett decl. ¶ 3; Chhan Tr. at Exh 3, p. 18-19).

5.  Hilton employees are also required to adhere to Hilton's Standards of Conduct policy. (Sterrett decl. ¶ 4). A copy of the policy is included in the Team Member Handbook. (Sterrett decl. ¶ 4; Chhan Tr. at Exh 3, p. 61-68). A section of the Standards of Conduct Policy, titled "Examples of Prohibited Team Member Conduct," lists examples of prohibited conduct, including:

> - "Offensive or disruptive behavior, including fighting with or threatening team members or guests";
> - "Harassing, threatening, intimidating, coercing or unlawfully discriminating against others";
> - "Violation of the Hilton Harassment-Free Workplace Policy";
> - "Using abusive language or profanity";
> - "Discourtesy or inappropriate conduct with guests or team members."

(Chhan Tr. at Exh 3, p. 66).

6.      An employee who violates the Harassment-Free Workplace or Standards of Conduct policy is subject to discipline. (Sterrett decl. ¶ 5, Chhan Tr. at Exh 3, p. 19, 61). Depending on the nature of the violation, the employee may receive a warning, a suspension from 1-5 days, or may be terminated. (Sterrett decl. ¶ 5). The type of discipline an employee may receive also depends on the employee's past disciplinary record. (Sterrett Tr. I at 9).

7.      Chhan received a copy of the Team Member Handbook containing these policies. (Chhan Tr. at 30; Exh 4). Chhan admitted he reviewed the handbook and understood its contents. (Chhan Tr. at 30; Exh 4).

8.      Chhan also admitted he understood Hilton's Harassment-Free Workplace Policy. (Chhan Tr. at 31.) On October 31, 2005, Chhan participated in Hilton's Harassment-Free Workplace training. (Chhan Tr. at 42, Exh 6).

9.      Chhan also testified he was specifically aware of the "Examples of Prohibited Team Member Conduct" included in the Standards of Conduct policy. (Chhan Tr. at 31-33). Chhan testified he knew engaging in conduct prohibited under Hilton's Standard of Conduct policy was grounds for discipline, including termination. (Chhan Tr. at 33-39).

**B.      Hilton Investigated Allegations That Chhan Threatened a Coworker**

10.     As Director of Human Resources, Sterrett's duties included investigating employee violations of Hilton policies. (Sterrett decl. ¶ 6). After completing an investigation, Sterrett was responsible for determining what, if any, discipline would be given to an employee who was found to have violated a Hilton policy. (Sterrett decl. ¶ 6).

11.     In early March 2006, Sterrett learned there had been an incident on March 5, 2006 between Chhan and a Banquet Houseperson, Mustafa Allame. (Sterrett Tr. I at 40). Sterrett investigated the incident. (Sterrett Tr. I at 40).

12.     In the course of Sterrett's investigation, she spoke with Hilton employees Mustafa Allame and Lolo Villagomez. (Sterrett Tr. I at 43). Both employees told Sterrett they had witnessed Chhan say "I want to kick your M-F ass" to Allame. (Sterrett Tr. I at 42-43). Both employees also told Sterrett that Chhan started to take off his jacket as though he was ready to start a fight with Allame. (Sterrett Tr. I at 42-43).

13.     As part of the investigation, Sterrett spoke with Chhan. Chhan denied making the statement or acting in a way that would have led Allame and Villagomez to believe he wanted to fight. (Sterrett Tr. I at 46).

C.     **Chhan Was Suspended for Five Days for Threatening a Co-Worker**

14.     Sterrett was not aware of any reason why Allame or Villagomez would provide false information about Chhan. (Sterrett decl. ¶ 7). Based on the two witness accounts, Sterrett concluded Chhan had violated Hilton's policy against threatening co-workers. (Sterrett decl. ¶ 8). Sterrett suspended Chhan for five days for violating Hilton policy. (Chhan Tr. at Exh. 7).

15.     Chhan admits he does not know who Sterrett spoke with during the course of this investigation or what information was provided to her. (Chhan Tr. at 52).

16.     Chhan admits Sterrett suspended him only because she believed the other employees' version of events relating to the March 5, 2006 incident. (Chhan Tr. at 58-59).

D.     **Three Coworkers Reported that Chhan Made Sexually Offensive Statements**

17.     On July 19, 2006, employees Hernan Vasquez, Mustafa Abouhouda and Rosa Rosero complained to Sterrett that Chhan had made obscene sexual statements earlier that morning. (Sterrett Tr. I at 19).

18. It is a common practice for Hilton employees to be placed on leave pending an investigation of a policy violation. (Sterrett Tr. I at 45). Accordingly, Sterrett placed Chhan on leave pending investigation. (Sterrett Tr. I at 25).

19. In the course of her investigation, Sterrett interviewed Vasquez, Abouhouda, Rosero and employee Peter Chan about what, if anything, they had heard Chhan say the morning of July 19. (Sterrett Tr. I at 19, 25).

20. Sterrett determined Vasquez had not witnessed Chhan's conduct and did not have personal knowledge of the incident. (Sterrett Tr. I at 20). Since Vasquez was not a witness, Sterrett did not consider any information provided by Vasquez in reaching her conclusion about Chhan's behavior the morning of July 19. (Sterrett Tr. I at 33).

21. Rosero told Sterrett she heard Chhan make offensive statements to the effect that he could "fuck their wives" and that he "give good fuck." (Sterrett Tr. I at 34). Sterrett observed Rosero was upset about Chhan's comments. (Sterrett Tr. I at 33).

22. Rosero testified that, at the time she was interviewed by Sterrett, Rosero told her everything she had heard Chhan say on July 19. (Rosero Tr. at 27).

23. Abouhouda also testified he heard Chhan making sexually offensive statements on July 19, 2006. (Abouhouda Tr. at 12-13). Abouhouda testified he told Sterrett about the statements he heard Chhan make. (Abouhouda Tr. at 26).

24. After interviewing Abohouda, Sterrett concluded he had heard Chhan make offensive statements to the effect that he could "fuck their wives" and that he "give good fuck." (Sterrett Tr. I at 34). Sterrett also observed Abouhouda was upset about Chhan's comments. (Sterrett Tr. I at 33).

25. Peter Chan testified he told Sterrett he also heard Chhan make sexually offensive comments:

> Q. When you eventually talked to Robin Sterrett from human resources, do you remember telling her that Kin Chhan said "I can do it in front of you, I want to show you how good I am?"
>
> A. Yes.
>
> Q. "I can have any woman I want?"
>
> A. Yes.
>
> Q. Okay. And Peter confirmed that Kin used the word "fuck." Can you, when you're telling Ms. Sterrett, I can do it in front of you, are you really telling her that what he was saying, Kin Chhan was saying was, I can fuck in front of you? Is that what he was saying?
>
> A. I can fuck your wife in front of you and show you how strong I am. That's what I told Robin.

(Chan Tr. at 28).

26. After interviewing Chan, Sterrett concluded he had heard Chhan say "I can do their wives, I'm good at doing it, I can do it in front of anyone" and that Chhan had used the "F-word." (Sterrett Tr. I at 28).

27. Peter Chan is Chinese. (Chan Tr. at 2).

28. Sterrett also interviewed Chhan as part of the investigation. (Chhan Tr. at 61). He denied making sexually offensive statements the morning of July 19. (Chhan Tr. at 114).

29. Chhan admits he does not know what Vasquez and Abouhouda told Sterrett about what they observed or who else Sterrett interviewed:

> Q. And you don't know what Hernan [Vasquez] said to Robin, right?
>
> A. I don't know.
>
> Q. You don't know what Mustafa [Abouhouda] said to Robin, right?

6

>   A.   I don't know.
>
>   Q.   You don't know if Robin talked to any other witnesses, right?
>
>   A.   I don't know.

(Chhan Tr. at 116).

### E.   Hilton Terminated Chhan for Committing a Serious Violation of Hilton Policy for the Second Time in Less Than Five Months

30.   Sterrett concluded the information provided by Rosero, Abouhouda and Chan was credible because she was not aware of any reason Rosero, Abouhouda or Chan would give her false information about Chhan. (Sterrett decl. ¶ 10). Sterrett believed Chhan had a reason to deny the allegations because he did not want to be subject to discipline. (Sterrett decl. ¶ 10).

31.   Relying on these three witness accounts, Sterrett concluded Chhan had violated Hilton's Harassment-Free Workplace Policy by engaging in "conduct that could be interpreted as harassment." (Sterrett decl. ¶ 11). Sterrett concluded Chhan also violated Hilton's Standards of Conduct policy by engaging in "discourtesy or inappropriate conduct" with his co-workers. (Sterrett decl. ¶ 11).

32.   Due to the nature of Chhan's policy violation, and because it was the second time Chhan had committed a serious violation of Hilton policy within a five-month period, Sterrett decided to terminate Chhan's employment. (Sterrett decl. ¶ 12).

33.   Sterrett informed Chhan's supervisor, Banquet Manager Kevin O'Shea, of her investigation findings and her decision to terminate Chhan. (Sterrett decl. ¶ 13). Sterrett and O'Shea informed Food and Beverage Director, Gordon Marr, and General Manager, Frank Otero, of the termination decision. (Sterrett decl. ¶ 13).

34.     On July 27, 2006, Sterrett and O'Shea met with Chhan and told him Hilton was terminating his employment because the investigation had determined Chhan had made offensive statements in violation of Hilton policy. (Chhan Tr. at 119-120).

35.     Chhan testified the only reason he believes he was terminated is because Sterrett believed the other employees' accounts of his conduct on July 19:

> Q.     Robin told you she was terminating you for violating the harassment policy, right?
>
> A.     Yes.
>
> Q.     And she decided you were violating the harassment policy because of the accusations that were reported to her on July 19, right?
>
> A.     Yeah.
>
> Q.     So you have testified that those accusations are untrue, right?
>
> A.     That's untrue, yeah.
>
> Q.     But Robin believed the accusations, right?
>
> A.     Yeah.
>
> Q.     And so that's why she terminated you, right?
>
> A.     Yeah.
>
> Q.     And that's the only reason why she terminated you, right?
>
> A.     Yeah.

(Chhan Tr. at 122).

36.     Chhan testified he did not know why Sterrett believed the other employees she interviewed instead of him. (Chhan Tr. at 120).

**F.      Chhan Was Not Replaced**

37.     Hilton did not hire a Banquet Server or other employee to replace Chhan. (Sterrett decl. ¶ 14).

38.     Chhan admits he does not know if anyone was hired to replace him. (Chhan Tr. at 124).

**G.      Hilton Has Terminated Employees Outside Plaintiff's Protected Class for Similar Policy Violations**

39.     During the time Sterrett was Hilton Washington's Director of Human Resources, Chhan was the only employee who violated the Harassment Free-Workplace and Standards of Conduct policies less than five months after being suspended for another serious violation of Hilton policy. (Sterrett decl. ¶ 12).

40.     However, in January 2005, Sterrett terminated an employee for calling a co-worker a "bitch" in violation of Hilton's Standards of Conduct policy. This occurred approximately two months after the employee was suspended for violating Hilton policy by being discourteous to a coworker. (Sterrett Tr. II at 8-9; Sterrett decl. ¶ 16, exh. 1). The employee was African-American. (Sterrett Tr. II at 9).

41.     The employee was subject to the same disciplinary procedure as Chhan. (Sterrett decl. ¶ 16). Like with Chhan, Sterrett suspended the employee for five days for her first policy violation. (Sterrett Tr. II at 4). Like with Chhan, Sterrett placed the employee on leave while she investigated the second policy violation. (Sterrett Tr. II at 8-9, exh. 1). Like with Chhan, after Sterrett had completed her investigation and determined the employee had violated Hilton policy for a second time, Sterrett terminated the employee. (Sterrett Tr. II at 9).

42.  Sterrett has also terminated several other employees of different races and national origins than Chhan for engaging in offensive conduct in violation of Hilton policy even though the employees had no record of discipline in the prior five months:

- In May 2002, Sterrett terminated a Hispanic Banquet Server for violating Hilton's Harassment-Free Workplace policy. (Sterrett Tr. II at 11; Sterrett decl. ¶ 17, exh. 2). The employee had no record of previous discipline. (Sterrett Tr. II at 11).

- In September 2002, Sterrett terminated an African American employee for violating Hilton policy for threatening a coworker. (Sterrett Tr. II at 14; Sterrett decl. ¶ 17, exh. 3). The employee had no record of discipline in the prior five months. (Sterrett decl. ¶ 17).

- In May 2003, Sterrett terminated a Hispanic employee for violating Hilton policy by threatening a coworker. (Sterrett Tr. II at 15; Sterrett decl. ¶ 17, exh. 4). The employee had no record of discipline in the prior five months. (Sterrett decl. ¶ 17).

- In June 2005, Sterrett terminated an African-American employee for violating Hilton policy by threatening a coworker. (Sterrett Tr. II at 16-17; Sterrett decl. ¶ 17, exh. 5). The employee had no record of discipline in the prior five months. (Sterrett decl. ¶ 17).

- In March 2006, Sterrett terminated a Hispanic employee for violating Hilton policy by engaging in a verbal altercation with and threatening a coworker. (Sterrett Tr. II at 17; Sterrett decl. ¶ 17, exh. 6). The employee had no record of discipline in the prior five months. (Sterrett decl. ¶ 17).

43. Chhan admitted he does not know if Hilton has terminated other employees for making sexual or offensive comments in the workplace. (Chhan Tr. at 123).

                              Respectfully submitted,

                              **Hilton Hotels Corporation**

By: _____/s/_____
John M. Remy (D.C. Bar No. 461244)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
*Counsel for Defendant*