UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIN S. CHHAN,                    )
                                 )
        Plaintiff,               )
                                 )
                                 )
                                 )
    v.                           )   Civ. No.: 1:07cv01180 (HHK)
                                 )
                                 )
HILTON HOTELS CORPORATION,       )
                                 )
                                 )
        Defendant.               )
                                 )

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant Hilton Hotels Corporation ("Hilton"), by its attorneys, submits this reply brief in support of its motion for summary judgment on both discrimination claims in Plaintiff's complaint.

I.   **SUMMARY**

Hilton's motion for summary judgment showed Plaintiff was unable to establish a prima facie case of discrimination or any evidence of pretext because the undisputed facts show Robin Sterrett decided to terminate Plaintiff after independent witnesses confirmed Plaintiff violated Hilton's harassment policy less than five months after being suspended for physically threatening a co-worker.

In response, Plaintiff's counsel makes three arguments. First, Plaintiff's counsel second-guesses the credibility assessments Sterrett made during her investigation that led to Plaintiff's termination. However, under D.C. law, a plaintiff cannot establish pretext by attacking an

1

investigation in this manner. In addition, Plaintiff's counsel's argument is contrary to the undisputed record facts.

Plaintiff's counsel next argues that Sterrett's two prior investigations into complaints about Plaintiff show pretext. Plaintiff's counsel's arguments regarding both investigations contradict the undisputed record facts without *any* evidentiary support. When the undisputed record facts are examined, both investigations are actually evidence that Sterrett did *not* discriminate against Plaintiff.

Finally, Plaintiff's counsel tries to show pretext by relying upon disciplinary decisions (1) made by other supervisors (with no involvement by Sterrett) and/or (2) involving other employees who did not commit policy violations similar to Plaintiff's. Under D.C. law, the employees involved in these disciplinary decisions are not similarly situated to Plaintiff and cannot be used to establish pretext. This is especially true where, as here, the undisputed record facts show Sterrett terminated employees outside Plaintiff's protected class for similar policy violations.

Accordingly, Hilton is entitled to summary judgment on all claims.

## II. ARGUMENT

### A. Plaintiff Cannot Show Pretext By Second-Guessing Sterrett's Investigation

Hilton's motion for summary judgment showed Plaintiff cannot establish pretext because Sterrett terminated Plaintiff based on a belief Plaintiff violated Hilton's Harassment policy less than five months after Plaintiff was suspended for physically threatening a coworker in violation of Hilton's Standards of Conduct policy.

In his Opposition, Plaintiff's counsel tries to establish pretext by attacking Sterrett's investigation in two ways. First, Plaintiff's counsel argues that Sterrett did not investigate

Plaintiff's statement that his accuser (Vasquez) provoked him by calling him a "mother fucker." Second, Plaintiff's counsel argues Sterrett should have interviewed Plaintiff's brother and believed Plaintiff's account of the incident instead of the accounts of other employees. As explained below, Plaintiff's counsel's arguments fail for several reasons.

### 1. Sterrett Did Not Fail to Investigate Any Complaint About Vasquez

Plaintiff's opposition argues that "Sterrett admits that she ... was also aware that Plaintiff's brother had heard Mr. Vasquez say 'I hate this mother fucker,' referring to Plaintiff." (Opp. at 18). Plaintiff's counsel argues that the investigation was "one-sided" because Sterrett did not investigate Vasquez's alleged statement.

However, there is no evidence in the record that Sterrett was aware, at any point during Plaintiff's employment, that Plaintiff or his brother alleged Vasquez called Plaintiff a "mother fucker." Plaintiff's counsel cites only to San Chann's declaration to support this assertion. San's declaration merely claims that he heard Vasquez use this term and does *not* claim he ever told Sterrett that Vasquez used this term. (Opp. Exh. 2 at 10). There is also no other record evidence that Sterrett knew or was told Vasquez used this term. Sterrett denies Plaintiff or his brother complained about Vasquez using this term during Plaintiff's employment. (¶ 49).[1]

The fact that Sterrett did not investigate Vasquez's alleged use of the term "mother fucker" is not evidence of pretext where there is no record evidence Sterrett knew of this allegation at the time.[2]

---

[1] Paragraph citations are to Hilton's supplemental statement of material undisputed facts filed contemporaneously with this memorandum.

[2] As explained below, even if Sterrett knew San Chhan accused Vasquez of using this term, Sterrett's purported failure to investigate this claim is not evidence of pretext because Vasquez is not similarly situated to Plaintiff.

3

### 2. Plaintiff Cannot Establish Pretext by Second-Guessing the Details of Sterrett's Investigation

Plaintiff's counsel also tries to establish pretext by arguing Sterrett should have interviewed San Chhan and should have believed Plaintiff when he said he was provoked by Vasquez allegedly calling him a "thief." However, under D.C. law, Plaintiff cannot establish pretext by arguing Sterrett should have, or could have, conducted her investigation differently. *See Hollins v. Fannie Mae*, 760 A.2d 563, 573 (D.C. 2000) ("Even assuming arguendo that the investigations were flawed, the reliability of the investigations and reports is irrelevant").

In *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 2008 U.S. App. LEXIS 6460 (D.C. Cir. 2008), the plaintiff claimed he was terminated because of his race. The employer maintained it terminated plaintiff because it concluded he had sexually harassed his coworkers. The U.S. Court of Appeals for the D.C. Circuit held that the plaintiff could not establish pretext by arguing he did not commit the underlying harassment or by challenging the employer's resolution of factual disputes during the investigation. Instead, to establish pretext and survive summary judgment, the plaintiff must show the investigation was "dishonest or unreasonable":

> Brady's only argument for discrediting the employer's asserted non-discriminatory reason is his contention that the underlying sexual harassment incident never occurred; he raises the specter that the original accusers were racially motivated and made up the incident. Brady further says it's the jury's job to decide factual and credibility questions of this kind. But Brady misunderstands the relevant factual issue. The question is not whether the underlying sexual harassment incident occurred; rather, the issue is whether the employer honestly and reasonably believed the underlying sexual harassment incident occurred. Although Brady asserts that the accusations and ensuing investigation were racially tainted and the incident did not occur, he did not produce evidence sufficient to show that the Sergeant at Arms' conclusion was dishonest or unreasonable. Therefore, summary judgment for the Sergeant at Arms was proper.

> Allowing Brady to end-run summary judgment in these circumstances would create significant practical problems. Employers obviously have to resolve factual disagreements all the time in order to make employment decisions regarding hiring, promotion, discipline, demotion, firing and the like. In many situations, employers must decide disputes based on credibility assessments, circumstantial evidence and incomplete information. But Brady's argument would mean that every employee who is disciplined, demoted or fired for alleged misconduct could sue for employment discrimination based on race, color, sex or national origin and – merely by denying the underlying allegation of misconduct – automatically obtain a jury trial. Brady cites no support for that proposition, which would wreak havoc on district courts' orderly resolution of employment discrimination cases and improperly put employers in a damned-if-you-do, damned-if-you-don't posture when addressing disciplinary issues in the workplace.

*Id.* at *14-16.

Here, as in *Brady*, Plaintiff is attempting to "end-run" summary judgment by arguing Sterrett made the wrong credibility assessments during her investigation. Sterrett chose not to interview San Chhan because he is Plaintiff's brother, she assumed his account would support his brother's, and his account would be biased because he is the Plaintiff's brother. (¶ 50). Instead, Sterrett chose to believe Vasquez and the other witnesses who claimed Plaintiff made the inappropriate statements.

Here, as in *Brady*, Plaintiff fails to produce any evidence sufficient to show Sterrett's conclusions or her decisions during the investigation were "dishonest or unreasonable." There is no evidence in the record suggesting Sterrett's decisions during her investigation were based on Plaintiff's race or national origin in any way. Allowing Plaintiff to avoid summary judgment by challenging the nuances and details of Sterrett's investigation would place Hilton in exactly the "damned if you do-damned if you don't" situation the Court of Appeals rejected in *Brady*. For these reasons, Plaintiff cannot establish pretext, and Hilton is entitled to summary judgment.

**B.    There Is No Evidence Sterrett's Prior Investigations of Complaints Against Plaintiff Were "One-Sided"**

Plaintiff's opposition also argues Sterrett's investigations of two prior complaints against Plaintiff (in March 1999 and March 2006) are evidence of pretext because they were "one-sided." (Opp. at 22). The undisputed facts show there is no evidence of pretext in either investigation.

**1.    March 1999 Investigation**

Plaintiff's counsel argues, in March 1999, Sterrett investigated a complaint against Plaintiff that he intentionally spilled coffee on a co-worker. Without any citation to the record, Plaintiff's counsel asserts Sterrett immediately suspended Plaintiff pending the investigation and later issued him a three day suspension as a result of her "one-sided" investigation. (Opp. at 9).

Contrary to Plaintiff's unsupported assertion, the undisputed facts in the record show another manager, Mr. Russell, suspended Plaintiff before the complaint was even brought to Sterrett's attention. (¶¶ 44-45). The undisputed facts show Sterrett did not investigate the incident until more than a week after Russell suspended Plaintiff. (¶ 46). The undisputed facts also show, and Plaintiff's Opposition concedes, Sterrett found *in Plaintiff's favor* and reduced the suspension to a written warning. (¶ 46); (Opp. at 10).

Sterrett overruling another manager's suspension of Plaintiff in 1999 is *not* evidence that Sterrett discriminated against Plaintiff in 2006. To the contrary, Sterrett finding in Plaintiff's favor is evidence that Sterrett was *not* discriminating against Plaintiff. It makes no sense that Sterrett would find in favor of Plaintiff in 1999 and then, seven years later, find against him due to his race and national origin. Sterrett's finding in Plaintiff's favor in 1999 is not evidence of pretext.

## 2. March 2006 Investigation

It is undisputed, in March 2006, Sterrett investigated a complaint against Plaintiff that he had threatened a co-worker. Plaintiff's counsel argues this investigation was one-sided and evidence of pretext because Sterrett suspended Plaintiff even though his supervisor, Lolo Villagomez, allegedly recommended that no discipline was warranted. (Opp. at 13).

In fact, Plaintiff's citation to the record in support of this argument clearly shows Villagomez told an Assistant Banquet Manager, and *not* Sterrett, that he did not think discipline was warranted. (Opp. at Exh. 2, Att. 7). There is no record support for the assertion that Villagomez ever made this statement to Sterrett. Sterrett denies Villagomez ever made this statement to her. (¶ 46).

As detailed in Hilton's Undisputed Facts in Support of its Motion for Summary Judgment ("UF"), it is undisputed Sterrett investigated the March 2006 complaint. (UF 11). It is undisputed Sterrett spoke with Mustafa Allame and Villagomez, and both employees told Sterrett they heard Plaintiff say "I want to kick your M-F ass" to Allame. (UF 12). Both employees also told Sterrett that Plaintiff started to take off his jacket as though he was ready to fight with Allame. (UF 12). It is undisputed, that based on the two witness accounts, Sterrett concluded Plaintiff had violated Hilton's policy against threatening co-workers. (UF 14).

Villagomez' statement to an Assistant Banquet Manager about his views on Plaintiff's discipline is irrelevant and is not evidence that Plaintiff's March 2006 suspension or his termination were based on his race or national origin.[3] For these reasons too, Plaintiff cannot establish pretext and Hilton is entitled to summary judgment.

---

[3] Even if Villagomez had made this statement to Sterrett, it is not evidence of pretext without some evidence that Sterrett disregarded Villagomez's opinion based on Plaintiff's race and national origin. Of course, there is no evidence in the record to support such a conclusion.

7

### C.   Plaintiff Cannot Show Similarly Situated Employees Were Treated More Favorably

Hilton's motion for summary judgment showed Plaintiff also cannot establish a prima facie case of discrimination or pretext because Plaintiff could not identify any similarly situated employees who were treated more favorably. In his Opposition, Plaintiff's counsel argues that Hilton treated Plaintiff's coworkers more favorably "in the manner in which it investigated and prosecuted complaints of misconduct against him as compared to how they treated his coworkers." (Opp. at 17-18).

An employee is considered similarly situated to the plaintiff when all relevant aspects of their employment are "nearly identical." *Hollins v. Fannie Mae*, 760 A.2d 563, 578 (D.C. 2000). In *Childs-Pierce v. Utility Workers Union of Amer.*, 383 F. Supp. 2d 60 (D.D.C. 2005), the D.C. federal court explained the requirements for "similarly situated":

> In order to show that she was similarly situated to a fellow employee, plaintiff must demonstrate that all of the relevant aspects of their employment situation are nearly identical. In particular, *the co-workers must have dealt with the same supervisor*, have been subject to the same standards *and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.*

*Id.* at 70 (citations and quotations omitted) (emphasis added).

Here, as explained below, Plaintiff fails to identify any similarly situated employees who (1) dealt with the same decision-making supervisor (Robin Sterrett), and (2) engaged in the same conduct for which Plaintiff was terminated without differentiating or mitigating circumstances. For this reason Plaintiff cannot establish pretext, and Hilton's motion for summary judgment should be granted on all claims.

1.  **Plaintiff's Examples of Alleged Disparate Treatment
    By Decision-Makers Other Than Sterrett Do Not
    <u>Involve Similarly Situated Employees</u>**

Plaintiff cannot rely on complaints made to different decision-makers to establish pretext for Sterrett's decisions regarding Plaintiff. In *Phillips v. Holladay*, 937 F. Supp. 32 (D.D.C. 1996), the plaintiff claimed discriminatory termination. The employer maintained the plaintiff was terminated for insubordination due the way she conducted herself in a meeting with her supervisor. The plaintiff attempted to establish pretext by showing the employer treated employees outside her protected class more favorably. The Court held the plaintiff failed to identify any similarly situated employees because she did not identify any coworkers who were treated more favorably by the *same manager* who terminated the plaintiff. *Id.* at 37. ("Plaintiff in no way attributes ... the alleged preferential treatment to... the manager responsible for Plaintiff's termination."); s*ee also Lowery v. Xerox Corp.*, 2000 U.S. App LEXIS 19196, *16 (6th Cir. 2000) ("In order to be similarly situated, the two parties being compared must have dealt with the same supervisor or decision-maker."); *Heyward v. Monroe*, 1998 U.S. App. LEXIS 30855, *8 (4th Cir. 1998) ("If different decision-makers are involved, employees are generally not similarly situated.").

Plaintiff admits Sterrett made the decision to terminate his employment. (Opp. at 18). However, Plaintiff nonetheless attempts to establish pretext by showing Banquet Manager Kevin O'Shea and Hilton Washington's current Director of Human Resources Peter Hill have treated employees outside Plaintiff's protected class more favorably. Plaintiff claims:

- On July 2, 2004, *O'Shea* issued Plaintiff a written warning for poor service after a patron complained the buffet table was short of silverware. Plaintiff maintains he should not have been disciplined because the buffet table was another employee's

responsibility. In August 2007, San Chhan reported to *O'Shea* that the same employee who was allegedly responsible for the buffet table in the 2004 incident failed to comply with a guest's request for skim milk. (Opp. At 10-11). San Chhan testified he is not aware if O'Shea disciplined the employee for poor service. (Opp. at Exh. 2, para. 20).

- On March 19, 2005, *O'Shea* suspended Plaintiff for eating left over soup. (Opp. at 11). Plaintiff is not aware if O'Shea disciplined other employees who were also eating the soup. (Opp. at Exh. 1, para 7).

- In October 2005, *O'Shea* suspended Plaintiff and his brother for leaving a disciplinary meeting without being dismissed. O'Shea also disciplined San Chhan for calling his coworkers "dogs." Shortly thereafter, San Chhan complained to Banquet Captain Greg Hinds that the same coworkers he called "dogs" were late for work. (Opp. at 12-13). Plaintiff testified is not aware if the employees were disciplined for being late. (Opp. at Exh. 2, para 19).

- In March 2008, Plaintiff's brother San Chhan complained to *Hill* about four separate incidents in which he allegedly observed co-workers violating the Hilton's harassment and/or Standards of Conduct policies. (Opp. at 14-16). Plaintiff claims Hill has not taken the same steps to investigate these allegations as were taken by Sterrett. (Opp. at 16).

It is undisputed that neither O'Shea nor Hill was responsible for the decision to terminate Plaintiff. (¶ 51). Plaintiff also does not allege Sterrett had any involvement in these other incidents. As in *Phillips*, the employees involved in these incidents who were allegedly treated more favorably are not similarly situated to Plaintiff because it is undisputed that Robin Sterrett,

the decision-maker responsible for Plaintiff's termination, had no role in these other incidents. As such, Plaintiff cannot establish pretext by reference to these other incidents involving different decision-makers.[4]

### 2. Plaintiff's Examples of Alleged Disparate Treatment By Sterrett Do Not Involve Similarly Situated Employees

Coworkers who do not engage in the same conduct as Plaintiff, or who engage in the similar conduct but with differentiating or mitigating circumstances that would distinguish the conduct or the employer's treatment of them for it, are not similarly situated. *See Childs-Pierce,* 383 F. Supp. 2d at 70. It is undisputed Sterrett terminated Plaintiff's employment because she concluded he violated Hilton's harassment policy less than five months after being suspended for physically threatening a coworker in violation of Hilton's Standards of Conduct policy. In his Opposition, Plaintiff fails to identify any other employee, of any race or national origin, who was found by Sterrett to have engaged in the same misconduct as Plaintiff and treated more favorably than Plaintiff. Plaintiff also does not dispute Hilton's evidence that employees outside Plaintiff's protected class were treated the same as Plaintiff (or more harshly) by Sterrett for violating the same policies Plaintiff was found to have violated. (RUF 40-42).[5]

Nevertheless, plaintiff's counsel argues three incidents, reported to and investigated by Sterrett over an eight-year period – including the two incidents that led directly to Plaintiff's termination – demonstrate she treated employees outside Plaintiff's protected class more

---

[4] Even if Sterrett was responsible for these decisions, the employees involved did not commit policy violations similar to those committed by Plaintiff and are not similarly situated for this reason as well.

[5] "RUF" refers to Plaintiff's Response to Hilton's Statement of Material Undisputed Facts in Support of Motion for Summary Judgment.

favorably than Plaintiff and his brother.[6] None of these examples involve similarly situated employees.

### a. March 1999 Incident

Plaintiff's opposition argues, in March 1999, in the course of appealing a suspension Plaintiff had received from another supervisor, he complained that the other employees involved in the incident called him "Chino." (Opp. at 9). Plaintiff's opposition asserts Sterrett treated the employees who made the comment more favorably than Plaintiff because she did not discipline them. (Opp. at 9-10). These other employees are not similarly situated to Plaintiff for several reasons. First, calling Plaintiff "Chino" is not "nearly identical" to the conduct for which Plaintiff was terminated – making offensive sexually obscene statements in the presence of co-workers such as he would "fuck their wives" and he "give good fuck." Second, there is no evidence that the employees in March 1999 were suspended less than five months earlier for threatening a co-worker with physical violence as Plaintiff was.

Third, in March 1999, Plaintiff complained to Sterrett in the context of trying to shift blame onto other employees so that the disciplinary action taken against him would be overturned. The circumstances surrounding Plaintiff's complaint can be easily distinguished from the circumstances surrounding the complaint ultimately leading to plaintiff's termination because in the latter instance, several employees initiated a report to management regarding Plaintiff's offensive statements. Fourth, as explained above, Sterrett found in Plaintiff's favor in

---

[6] Plaintiff's counsel also seems to argue that Sterrett's failure to address incidents of misconduct directed at Plaintiff and his brother by other Hilton employees that she *should* have known about demonstrate her reason for terminating Plaintiff was pretext for discrimination. (Opp. at 20). These incidents are irrelevant to summary judgment because there is no evidence these incidents were ever brought to Sterrett's attention. For example, the declarations of James Hunt and Peeng Long Yow describe examples of the alleged teasing of Plaintiff and his brother, but do not claim these issues were ever brought to Sterrett's attention. (Opp. at Exh. 5,6). San Chhan's declaration mentions no incidents when he complained to Sterrett and only one incident - the March 1999 incident - when Plaintiff complained to Sterrett. (Opp. at Exh. 2).

March 1999 and overturned the suspension imposed by another manager, proving that Sterrett was not making decisions based upon Plaintiff's race or national origin.

For these reasons, the employees at issue in the March 1999 incident are not similarly situated to Plaintiff.

### b.  March 2006 Incident

In his Opposition, Plaintiff's counsel seems to argue Sterrett treated other employees more favorably because she suspended Plaintiff for threatening a coworker in March 2006. (Opp. at 13). Plaintiff cannot establish similarly situated employees were treated more favorably because there is no evidence in the record that any other Hilton employee has been found to have threatened a coworker and was not suspended. To the contrary, the undisputed evidence shows several other Hilton employees outside Plaintiff's protected class have been suspended or terminated for violating Hilton's policy prohibiting threats against a coworker. (UF 42).

### c.  July 2006 Incident

Plaintiff's opposition argues Vasquez is similarly situated to Plaintiff because he allegedly called Plaintiff a "mother fucker" on the morning of July 19, 2006. (Opp. at 18). Plaintiff cannot establish Vasquez was similarly situated to him for several reasons. First and most importantly, as explained above, there is no evidence Sterrett was aware Vasquez allegedly made this statement. Even Plaintiff's brother's declaration does not allege he told Sterrett about this statement while Plaintiff was employed. (Opp. at Exh. 2). Vasquez cannot be similarly situated to Plaintiff if no one complained about Vasquez and Sterrett never had an opportunity to investigate.

Second, even if the record showed someone complained to Sterrett that Vasquez made the alleged comment (which it does not), there are differentiating circumstances that would

distinguish Sterrett's treatment of Vasquez. There is no evidence in the record that Vasquez, like Plaintiff, was suspended for threatening a co-worker less than five months earlier. Unlike Plaintiff, Sterrett never concluded that Vasquez made this offensive statement. Unlike Plaintiff, no independent witnesses ever confirmed to Sterrett that Vasquez made this statement (during the investigation or during this litigation.)

Even if Sterrett knew of Vasquez's alleged statement, the lack of independent witness confirmation that Vasquez made the statement renders him not similarly situated to Plaintiff. Instead, Plaintiff complained to Sterrett in the context of trying to shift blame onto other employees so that Sterrett would not take disciplinary action against him. In the investigation as a whole, there is no evidence Sterrett believed Vasquez and the other witnesses over Plaintiff due to Plaintiff's race or national origin.

For these reasons, Vasquez was not similarly situated to Plaintiff.

## III.   CONCLUSION

There are no material facts in dispute relating to the basis for Sterrett's decision to terminate Plaintiff. In Plaintiff's Response to Defendant's Statement of Material Undisputed Facts, Plaintiff either expressly admits or fails to deny all material facts relied upon by Hilton to show Plaintiff cannot establish Sterrett's reason for terminating Plaintiff was pretext for discrimination. Specifically:

- Plaintiff admits Sterrett conducted an investigation of Plaintiff's alleged misconduct and three employee witnesses reported consistent accounts of sexually offensive statements Plaintiff made. (RUF 19, 22, 23, 25).

- Plaintiff admits Sterrett believed the three witnesses. (RUF 30). Plaintiff admits he does not know why Sterrett believed the other employees she interviewed instead of him. (RUF 36).

- Plaintiff does not deny Sterrett concluded Plaintiff had violated Hilton policy based on the information provided by these witnesses. (RUF 31).

- Plaintiff does not deny Sterrett decided to terminate Plaintiff due to the serious nature of his policy violation and because it was the second time Plaintiff committed a serious policy violation within a five month period. (RUF 32).

- Plaintiff does not deny Sterrett terminated other employees outside Plaintiff's protected class for similar or less severe policy violations. (RUF 40-42).

For these reasons and the reasons discussed in Hilton's memorandum in support of its motion for summary judgment, Hilton asks the Court to grant its motion for summary judgment, enter judgment in Hilton's favor on all claims, and dismiss this case with prejudice.

Respectfully submitted,

**Hilton Hotels Corporation**

By: _____/s/_____
John M. Remy (D.C. Bar No. 461244)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system; opposing parties and the judge were served consistently with the instructions therein. A copy was mailed first class postage to:

> James L. Kestell
> Jonathan L. Gould
> 1012 14th Street, N.W.
> Suite 630
> Washington, D.C.
> *Counsel for Plaintiff*

By:_____/s/_____
John M. Remy, (D.C. Bar No. 461244)
Kara M. Ariail (D.C. Bar No. 478718)
Jackson Lewis LLP
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
*Counsel for Defendant*